1
2
3                    UNITED STATES DISTRICT COURT
4                          DISTRICT OF ARIZONA
5   Pattijo Patterson,
                                              Case No. CIV-08-649 TUC- RCC-JJM
6              Plaintiff,

7        v.                                   **REPORT AND**
                                              **RECOMMENDATION**
8   Michael J. Astrue, Commissioner
    Social Security Administration,
9
               Defendant.
10

11        Plaintiff Patterson brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial

12  review of a final decision by the Commissioner of Social Security.  This Social Security Appeal

13  has been referred to the United States Magistrate Judge pursuant to Local Rule – Civil 72.2(a)(10)

14  of the Rules of Practice of this Court.  Based on the pleadings of the parties and the record

15  submitted to the Court, the Magistrate Judge recommends that the District Court, after its

16  independent review, deny Plaintiff's Motion for Summary Judgment [Doc. No. 12].

17  **I. Procedural Background**

18        On October 1, 2004, Plaintiff filed an application for disability insurance benefits, alleging

19  a disability onset date of June 3, 2003, due to arthritis, joint and disc degeneration, and

20  fibromyalgia.  (AR 135-138.)[1]  At the hearing level, in a decision dated July 25, 2006, the ALJ

21  found that Plaintiff was not disabled.  (AR 71-74.)  Plaintiff requested review and, on June 22,

22  2007, the Appeal council granted the request, vacating the decision, and remanding back to the

23  ALJ for further findings.  (AR 102-104, 120-124.)  After the rehearing, the ALJ, in a decision

24  dated October 24, 2007, found that Plaintiff not disabled.  (AR 16-28.)  The Appeals Council

25  denied Plaintiff's request for review of the ALJ's decision.  (AR 7-9.)  Plaintiff then commenced

26  this action for judicial review pursuant to 42 U.S.C. § 405(g), alleging that the ALJ improperly

27

28  _____

        [1] "AR" refers to the certified transcript and administrative record.

rejected treating source opinions, and improperly found Plaintiff not entirely credible regarding her allegations of pain.

## II. Record on Appeal

### A. Plaintiff's Testimony

At the August 22, 2007, hearing after remand, Plaintiff was represented by counsel and testified on her own behalf.  She stated that she is 5'7" tall and 185 pounds, is married and has a high school education.  (AR 53-54.)  Her last job was full-time and involved home remodeling and she did design, sanding, and painting.  (AR 54.)  She stopped working in 2003 because she was in pain and often needed to call in sick.  (AR 54.)

Prior to the remodeling job, Plaintiff worked as an optometric assistant where she completed medical information forms and assisted patients with their glasses and contacts.  (Ar. 55.)  She left that job due to "a personal problem with one of the employees."  (*Id*.)

While she was working remodeling homes, her primary care physician, Michael Duperret, M.D., whom she had been seeing since 2002, recommended in 2004 that she go to the Integrative Pain Center because she "was just in pain constantly."  (AR 56.)  At the Pain Center, she saw Bennett Davis, M.D., and a nurse practitioner.  (AR 56-57.)  Dr. Davis took x-rays and treated her with  medication and injections in her arthritic knees and referred her to physical therapy. (AR 57.)

Dr. Bennett also referred Plaintiff to psychologist Cela Archambault.  (AR 57-58.)  She saw her regularly for a year to deal with "going from being a very busy person and having to admit that you can't do things that your brain want you to do . . . ."  (AR 58.)  Dr. Archambault taught her pain management techniques, meditation, and exercises.  (AR 58-59.)

Plaintiff had the joint in her thumb replaced on her left hand, and has had carpal tunnel surgery on the other.  (AR 59.)  She was also been treated with physical therapy for bursitis in her elbows, and for her hips and knees.  (AR 60.)

She indicated that she has been diagnosed with rheumatoid arthritis and fibromyalgia.  (AR 61.)  She sees Dr. Bajaj for her arthritis.  (*Id*.)

Plaintiff described her days as comprised of "a whole lot of laying down." (AR 61.) Her back and hips ache "pretty much all the time," and she is unable to sit or drive for long periods of time. (*Id.*) Her condition was much the same in 2003 and 2004. (AR 61-62.) She feels she cannot work because she cannot sit or walk for any length of time. Although she can feel great for a day, she will then "be down for two or three days." (AR 63.)

## B. Medical Evidence

In an August 9, 2004, letter to Michael Duperret, M.D., Bennett Davis, M.D., from the Integrative Pain Center of Arizona, reports that he examined Plaintiff. (AR 311.) Plaintiff presented with complaints of "multiple diffuse joint and muscle aches and pains," with her back and knees described as the worst. (*Id.*) She reported sleeping well with her medications, which included trazodone, Zanaflex, and Ultram, but despite her mood being fairly good, "she spends an average of about six hours per day down, unable to participate in any meaningful activity because of pain [predominately back pain]." (*Id.*) In addition to depression, which Dr. Davis described as "under fairly good control," the doctor opined that:

> her medical problems are the consequence of painful degenerative joint disease of multiple joints, Scheurerman's kyphosis, and possibly painful degenerative disc disease lumbar spine and or sacroilitis. Her arthritis is bad enough that she is scheduled to have reconstructive surgery for the left CMC joint soon. I think these are sufficient to explain her presentation, it is not necessary to invoke fibromyalgia syndrome. She does have diffuse myalgias that are probably consequent to chronic muscular bracing of painful joints plus altered gain/posture to compensate for degenerative joint disease.

(*Id.*) Dr. Davis assumed she had an "adequate rheumatologic evaluation," but did not have "high suspicion for a systemic inflammatory athritide." (*Id.*) The doctor ordered lumbar, thoracic and knee films to evaluate the kyphosis, the lumbar spine, and knees for degenerative joint disease. (*Id.*) An August 19, 2004, urogram reflects and normal rheumatoid factor and a negative ANA screen. (AR 332.) An August 23, 2004, x-ray examination of Plaintiff's knees showed negative findings with "no significant degenerative changes . . . ." (AR 425.)

On September 30, 2004, progress notes from Dr. Duperret reflect that Plaintiff reported that her pain was "so much better," but that she was unable to work. (AR 329.) The doctor reported that Plaintiff was making progress, but had "a long way to go." (*Id.*) On November 1, 2004, the doctor's assessment was that Plaintiff's fibromyalgia and inflammation was "much better," but that she was "still very debilitated." (*Id.*)

On December 10, 2004, Plaintiff underwent a psychological evaluation by Cela Marie Archambault, Ph.D., at Integrative Pain Center of Arizona. (AR 492-497.) Dr. Archambault noted that Dr. Davis had "concerns about depression interfering with rehabilitation and he feels she may be engaging in some self-defeating behavior." (AR. 492.) Dr. Archambault diagnosed Plaintiff with "[m]ajor depression recurrent, in spite of her testing results I believe it is currently moderate." (AR 496.) Under "Recommendations," Dr. Archambault indicated that Plaintiff "is a questionable candidate for cognitive behavioral therapy."

A January 4, 2005, note reflects that Plaintiff underwent "CMC arthroplasty and left carpal tunnel release." It was reported to have healed well and that she had "full thumb mobility." (AR 248.)

On January 28, 2005, Dr. Duperret assessed Plaintiff's fibromyalgia and inflammation as "stable, improved." (AR 247.) On March 1, 2005, she was reported to be doing "a little better with pain management." (AR 249.)

In a DES/Social Security questionnaire completed on March 8, 2005, Dr. Duperret indicated that Plaintiff had an established diagnosis of depression, which he characterized as a "significant mental impairment," and which resulted in "profound fatigue." (AR 259.)

On March 9, 2005, the State agency psychologist, Paul Tangeman, Ph.D., reviewed Plaintiff's records and found no medically determinable impairment. (AR 278.) Also in March 2005, a State agency doctor prepared a Residual Functional Capacity Assessment finding that Plaintiff did have exertional limitations, but that she could perform light exertional work. (AR 292-300.)

In April 2006, Thomas R. McCabe, Ph.D., a psychologist, examined Plaintiff at the request of DES Disability Determination Services. (AR 392-399.) Dr. McCabe took Plaintiff's history and administered verbal and performance tests. (AR 394-95.) He stated that, "[w]ithin the parameters of today's testing, I do not see evidence for diagnosis on Axis I or Axis II. Limitations would be in the Axis III domain." (AR 395.)

On October 5, 2006, was seen by Sonia Bajaj, M.D., a Board Certified Rheumatologist, complaining of a history of "pain in her ankles, knees, hips, neck, jaw, elbows and wrists for three years. (AR 593.) Dr. Bajaj's impressions included osteoarthritis, stating that "I believe the joint and the back pain may be related to this," and bilateral trochanteric and subacromion bursitis, which the doctor thought might be responsible for Plaintiff's myalgias. (AR 593.) On October 23, 2006, Dr. Bajaj followed up and noted Plaintiff's "[g]eneralized arthralgias and myalgias with elevated acute phase reactants and fullness over some of the joints in the upper and lower extremities." (AR 588.) She also noted that Plaintiff's osteoarthritis was stable. (*Id*.) On March 14, 2007, Dr. Bajaj stated that Plaintiff's rheumatoid arthritis was "currently doing fairly well. She does have some symptoms, but they are much improved." (AR 582.)

In April 2007, Dr. Duperret provided a Medical Source Statement to Plaintiff's counsel in which he stated that Plaintiff could only occasionally lift less than 10 pounds and was unable to frequently lift any weight at all. (AR. 415.) He also found that she was "unable to stand or walk even 2 hrs," and could sit for less than two hours in a normal workday. (*Id*.) He rated the impact of Plaintiff's condition on her ability to work as "severe," and indicated that she would be "expected to miss all days per month from work as a result of . . . her impairments . . . ." (AR 417.)

## C. ALJ's Findings and Decision

After considering the entire record and testimony, the ALJ found that the medical evidence established that the Plaintiff had the following medically determinable severe impairments: "osteoarthritis; fibromyalgia; status post CMC arthroplasty; and status post bilateral carpal tunnel

5

release . . . ." (AR 21.) However, "[b]ased on the current weight of the evidence," the ALJ concluded that the Plaintiff's depression:

> does not impose more than a minimal impact on her ability to perform work related activities and is, therefore, not a severe impairment under the Regulations.

(AR22.) The ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.*) The ALJ explained that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the exertional demands of sedentary work which is generally performed while sitting and does not require lifting in excess of ten pounds. She can stand and walk at least 2 hours each in an 8-hour workday. She is precluded from climbing ladder/rope/scaffolds and crawling. She can occasionally climb ramp/stairs, balance stoop kneel, crouch and crawl. She should avoid concentrated exposure to extreme cold and hazards (machinery, heights, etc. ). The claimant is able to do sustained work activities in an ordinary work setting on a regular and continuing basis.

(AR 22.)

Based on these findings and the accompanying analysis, the ALJ reached the following decision:

> Based on the application for a period of disability and disability insurance benefits protectively filed on October 1, 2004, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

(AR 28.)

## III.     Applicable Legal Standards

### A.     Sequential Evaluation Process

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. *See* 20 C.F.R. § 404.1520. At step one of the process, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, a finding of non-disability is made and the claim is denied. 20 C.F.R. § 404.1520(b). When the claimant is not currently engaged in substantial gainful activity, the ALJ, in step two, must determine whether the claimant has a severe impairment or combination of

impairments significantly limiting him from performing basic work activities; if not, a finding of non-disability is made and the claim is denied. 20 C.F.R. § 404.1520(c). A severe impairment or combination of impairments exists when there is more than a minimal effect on an individual's ability to do basic work activities. 20 C.F.R. § 404.1521(a); *Smolen*, 80 F.3d at 1290. Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, remembering and carrying out simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

At the third step, the ALJ must compare the claimant's impairment to those in the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or equals an impairment in the Listing, disability is conclusively presumed and benefits awarded. 20 C.F.R. § 404.1520(d). When the claimant's impairment does not meet or equal an impairment in the Listing, in the fourth step, the ALJ must determine whether the claimant has sufficient "residual functional capacity" despite the impairment or various limitations to perform her past work; if so, a finding of non-disability is made and the claim is denied. 20 C.F.R. § 404.1520(e). When the claimant shows an inability to perform past relevant work, a prima facie case of disability is established and, in step five, "the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." 20 C.F.R. § 404.1520(f).

### B.    Standard of Review

A district court's review of a disability determination is limited, and a final administrative decision can be revised "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citation and internal quotations omitted). "Substantial evidence means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Morgan v. Commissioner of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). It consists of "more than a mere scintilla but less than a preponderance." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999); *Young v. Sullivan*, 911 F.2d 181, 183 (9th Cir. 1990).

"In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Aukland v. Massanari*, 257 F.2d 1033, 1035 (9th Cir. 2001). However, the ALJ's decision must be upheld if the evidence is reasonably susceptible to more than one rational interpretation, *Allen v. Secretary of Health and Human Services*, 726 F.2d 1470, 1473 (9th Cir. 1984), and the Court cannot substitute its judgment for that of the Commissioner. *Reddick*, 157 F.3d at 720-21.

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996).

**IV. Discussion**

Plaintiff claims that the ALJ should be reversed and benefits awarded for two reasons. First, she contends that the ALJ erred by rejecting the opinions of her treating physicians without providing legitimate reasons. Second, Plaintiff argues that the ALJ improperly rejected Plaintiff's symptom testimony.

### A.    The ALJ's treating physician assessments were not in err.

Plaintiff argues first that the ALJ erred by rejecting the assessments of her treating psychologist, Dr Archambault, and her treating physician, Dr. Duperret. She contends that Dr.

Duperret's opinion was entitled to controlling weight and should have been adopted because there was no substantial evidence to contradict the opinion.

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The Ninth Circuit's standards for evaluating opinions from treating physicians are as follows:

> By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. *See* 20 C.F.R. § 404.1527. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Id.* § 404.1527(d)(2). If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with the other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id.* § 404.1527(d)(2)(i)-(ii). Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. *Id.* § 404.1527(d)(1)-(2). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs" and their evidentiary requirements' and the degree of his or her familiarity with other information in the record. *Id.* § 404.1527(d)(3)-(6).

*Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

Here, Dr. Archambault initially saw Plaintiff in December 2004 and ran a battery of tests. (AR 492.) In reporting the results, the doctor stated that Plaintiff reported her pain as ranging from a 2 to a 4 on a scale of 1 to 5 (with 5 being the highest) and that she was in the average range in regard to her level of emotionality and worry in response to severe pain. (AR 495.) A pain inventory test indicated that Plaintiff "reports a low amount of pain severity, being in the

9

lowest 15% compared to other patients, whereas she reports average interference and an average amount of support within the home." (AR 496.) The doctor stated that "this suggests . . . that [Plaintiff] . . . has unrealistic expectations of herself as she is much more active than the typical pain patient . . . ." (*Id.*) Reporting the results and interpretation of a Battery for Health Improvement, Dr. Archambault stated:

> This was considered a valid administration . . . . The patient's only elevations were in the areas of pain complaints, functional complaints, and muscular bracing. On all three of these, compared to other patients, she was in the average range. Surprisingly, her depressive scale was in the average range as well, even compared to the community sample. Overall, she had no elevations. Her perseverance score was in the low average range, suggesting that she has adequate ability to stick to what she needs to do. Surprisingly, this instrument did not show her as particularly defensive; however, I would have expected elevations on some of the scales, such as substance abuse and this did not show up. This suggests to me that the patient may actually have been lying on this instrument because she was fearful of what would be thought if she was actually open and honest in her statements. She did not endorse any critical items having to do with substance abuse, history of surviving violence, danger to self, or danger to others. In her character content areas she did have an elevation on self destructiveness. On the physical symptom content area she did have elevations on cognitive dysfunction and disability and work limitations.

(AR 496.) Dr. Archambault's Axis I diagnostic impression was: "Major depression, recurrent, in spite of her testing results I believe it is currently moderate." (*Id.*)

Later, in August 2005, Dr. Archambault Mental Residual Functional Capacity Assessment and found Plaintiff to have marked limitations in her ability to understand and remember detailed instructions, to maintain attention and concentration, to be punctual and maintain a regular schedule, to work in coordination with others, and to complete a normal work week. (AR 217-218.) Elaborating on these limitations, Dr. Archambault explained that Plaintiff was unable to follow a recipe, had impaired concentration and attention, and "on a day to day basis does not know what she will be able to do. Some days unable to motivate herself to do anything and spends much of the day crying." (AR 219.) The doctor noted that Plaintiff was easily distracted and had difficulty making decisions. (*Id.*)

1    In rejecting the latter assessment, the ALJ first noted that, with the exception of this

2    assessment, Plaintiff's "mental status examinations have been within normal limits and only mild

3    functional limitations were imposed . . . ." (AR 26.) The ALJ then stated that "[t]his assessment

4    has been rejected, as it is not consistent with the substantial evidence." (AR 27.) In support of

5    this statement, the ALJ primarily relies on the April 2006 examination and report of Dr. McCabe.

6    (AR 392-399.) Dr. McCabe took Plaintiff's history and administered verbal and performance

7    tests and did not find any evidence for an Axis I or Axis II diagnosis. (AR 394-95.)

8        The ALJ also cited several statements from Dr. Archambault's December 2004 evaluation

9    of Plaintiff. He notes that Dr. Archambault then believed that although Plaintiff had been

10   diagnosed with major depression, she believed it was then only moderate. (AR 24.) The ALJ

11   also noted that the 2004 report indicated that Plaintiff had "no elevations," and that she tested

12   largely in the "average" category. (AR 24-25.) The ALJ's reliance on these specific references,

13   and in light of the record as a whole, it is evident that the ALJ reviewed the record in its entirety

14   and reasonably interpreted by as supporting his conclusion that Dr. Archambault's opinions were

15   not "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . ."

16   *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(2)). Although the record could rationally

17   be interpreted as supporting a finding favorable to Plaintiff, it also was rational for the ALJ to

18   interpret the record as he did. It therefore would be improper for the Court to reject the ALJ's

19   evaluation of Dr. Archambault's opinions.

20       The conclusion is much the same with regard to the rejection of Dr. Duperret's opinions.

21   In rejecting Dr. Duperret's opinion, the ALJ stated that:

22           On April 26, 2007, Dr. Duperret completed a medical source
             statement, and opined that the claimant had a less than sedentary
23           RFC and was unable to work due to severe fibromyalgia,
             undiagnosed arthropathy, intractable pain and resultant depression.
24           The undersigned has given less weight to this opinion as it is without
             substantial support from the other evidence of record, which
25           obviously renders it less persuasive. Moreover, the doctor
             apparently relied quite heavily on the subjective report of symptoms
26           and limitations provided by the claimant, and seemed to uncritically
             accept as true most, if not all, of what the claimant reported. Yet, as

27

28                                                11

explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

(AR 26.)

Elsewhere in the Decision, the ALJ provided a number of findings that supported his conclusion. He noted that in December 2003, x-rays of the lumbar spine demonstrated normal findings. (AR 24.) In August 2004, laboratory findings showed a negative ANA screen, and x-rays of bilateral knees showed negative findings. (*Id*.) These objective findings can reasonably be interpreted as undermining both Dr. Duperret's opinions and Plaintiff's subjective complaints. Additionally, the ALJ noted that Dr. Duperret's records indicated in 2004 that Plaintiff was making "excellent progress" with her fibromyalgia and pain syndrome and that later in 2004 she was doing "much better." (*Id*.) With this information, the ALJ concluded that "treatment has been generally successful" in controlling Plaintiff's symptoms. (AR 26.) These considerations provide a sufficient basis for the ALJ's rejection of Dr. Duperret's disability opinions.

**B.** **The ALJ properly assessed Plaintiff's credibility.**

Plaintiff alleges that the ALJ erred in rejecting Plaintiff's testimony concerning her alleged limitations and symptoms without adequate reasons. (Plaintiff's Motion, pp. 10-13.) For the reasons explained below, the Court disagrees.

Determinations of a claimant's credibility are to be made by the Commissioner through the ALJ. *Talifson v. Secretary of HHS*, 554 F.Supp. 575, 580 (D.Mont. 1982). The ALJ is not required to accept as true every allegation of disabling pain or other non-exertional impairment. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms described by a plaintiff, the ALJ must make a finding as to the credibility of the plaintiff's statements about the symptoms and their effect on her functional capacity. *Robbins v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Unless affirmative evidence of malingering is found, the ALJ may reject the plaintiff's testimony regarding the severity of her symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. *Id*. A reviewing court must

give "great deference to credibility determinations made by administrative law judges." *Silver v. United States Postal Service*, 951 F.2d 1033, 1042 (9th Cir.1991). However, these findings must be sufficiently specific to allow a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-56 (9th Cir. 1991) (citation omitted). The ALJ is required to specifically identify the testimony found not to be credible and explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.2d 1195, 1208 (9th Cir. 2001).

In the instant case, the ALJ's decision not to rely on Plaintiff's subjective complaints is supported by the record. As illustrated by the record and the discussion above, there is a significant evidence in the record that undermines Plaintiff's complaints. The ALJ cited several objective studies that did not support Plaintiff's claims. These included normal x-rays of the lumbar spine, a negative ANA screen, and normal x-rays of the knees. (*Id.*) In refusing to find greater psychological limitations than those ultimately adopted, the ALJ specifically and reasonably relied on the records of Dr. McCabe. As discussed above, the reasons cited for rejecting Dr. Archambault's opinion and Plaintiff's credibility in relation to her mental condition, are sufficiently specific and convincing, particularly in light of the required deference to the ALJ's determination, to support the ALJ's findings.

## IV.    RECOMMENDATION FOR DISPOSITION BY THE DISTRICT JUDGE

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and Local Rule 1.17(d)(2), Rules of Practice of the United States District Court, District of Arizona, the Magistrate Judge recommends that the District Court, after an independent review of the record, **DENY** Plaintiff's Motion for Summary Judgment [Doc. No. 12].

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28

U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have ten (10) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CV-08-649 TUC- RCC**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 18th day of March, 2010.



Jacqueline Marshall
United States Magistrate Judge

14